## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**YVONNE ARAGON,**

      Plaintiff,

v.                                                 Civ. No. 04-1286 BB/WDS

**NEW MEXICO STATE DEPARTMENT OF**
**TRANSPORTATION and SEVERIANO SISNEROS,**
**in his individual capacity,**

      Defendants.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the motions for summary judgment of both

defendants, the New Mexico State Department of Transportation and Mr. Severiano Sisneros

(Docs. 13, 48 and 49).  Both defendants challenge Plaintiff's complaint under Federal Rule of

Civil Procedure 56, arguing that Plaintiff's claims fail as a matter of fact and law. This Court,

having considered the briefs of counsel and being otherwise advised, finds Defendants' motions

should be, and hereby are, **GRANTED.**[1]

_____

[1]After filing its Motion for Summary Judgment, the Defendants filed additional motions
attacking the admissibility of much of the evidence in the record to date, including for the
purposes of the Court's summary judgment ruling.  These motions were filed so close to the trial
date that the Plaintiff would not be able to adequately address the Defendants' arguments before
trial under the Court's briefing schedule.  Although it is true that certain evidence should not be
considered on a motion for summary judgment, Thomas v. International Business Machines, 48
F.3d 478, 485 (10th Cir. 1995), this Court finds it unnecessary to rule on these numerous
objections, which have not yet been fully briefed, in order to decide the Motions for Summary
Judgment, because, even when the questionable evidence is considered, the Court finds that
summary judgment is appropriate.  Therefore, the Court will decline to exclude evidence from
consideration on these evidentiary bases.  In the future, however, when Counsel makes a motion
for summary judgment in such close proximity to the trial date, Counsel should object to the
nonmovant's evidence in its Reply Brief, in order to permit the Court to efficiently address the
motion.

## BACKGROUND

This case involves a complaint by a female employee of the New Mexico State Department of Transportation ("Department"), who asserts claims against the Department as well as Defendant Sisneros, her direct supervisor for almost ten months during 1998 and indirectly from May, 2001 until he was demoted in December, 2004. Following a "kitchen sink" approach,[2] Plaintiff's complaint presents a broad and vague range of factual statements with somewhat disconnected statutory references. Summary judgment briefing has clarified the nature of the legal claims and the Court will attempt to deal with each. Count I of Plaintiff's complaint asserts the following claims: 1) a claim against the Department under Title VII of the Civil Rights Act of 1964; 2) claims against the Department and Sisneros under the New Mexico Human Rights Act; and 3) a claim against Sisneros under the Equal Protection Clause of the Constitution of the United States.[3] Count II of the complaint asserts a claim against Sisneros under 42 U.S.C. §1983 for alleged retaliation due to Plaintiff's exercise of her right of freedom of

---

[2]See Guerin v. Pointe Coupee Parish Nursing Home, 246 F. Supp. 2d 488, 501 (M.D.La. 2003), Humphrey v. Council of Jewish Federations, 901 F. Supp. 703, 706 (S.D.N.Y. 1995), and Brogdon v. Alabama Dept. of Economic and Community Affairs, 864 F. Supp. 1161, 1163 (M.D.Ala.1994) for discussion of the difficulties raised by such a strategy.

[3]See Complaint; Pl. Resp. to Department's Motion for Summ. J. at 1; Pl. Resp. to Sisneros' Motion for Summ. J. at 1, 21.

speech.[4]   Count III of the complaint asserts a claim under the Equal Pay Act, 29 U.S.C. 206(d)(1).[5]


## STANDARD OF REVIEW

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Medina v. Income Support Div.,  413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 587-88 (1986).

To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case.  Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing Hulsey v. K-Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at 587.

---

[4]The Court has previously entered an order granting partial summary judgment as to any portion of Plaintiff's claim based on perceived speech.  See Aragon v. New Mexico State Dep't of Transportation, et. al., 04 CV 1286 BB/WDS (January 24, 2006).

[5] Plaintiff abandoned her Equal Pay Act claim in Count III of the Complaint. Pl. Resp. to Department's Motion for Summ. J. at 1. Plaintiff had also asserted a claim under the Age Discrimination in Employment Act (ADEA) in her complaint, but also abandoned that claim in her response. Id.

**DISCUSSION**

<u>I. Title VII</u>

The Department argues that summary judgment is appropriate on Plaintiff's Title VII gender discrimination claim and retaliation claim.  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his "compensation, terms, conditions or privileges of employment because of such individual's . . . sex." 42 U.S.C. §2000e-2(a)(1). Plaintiff relies on two theories to demonstrate a Title VII violation: disparate treatment and hostile work environment.

A. <u>Disparate Treatment</u>

Disparate treatment simply means an employer treats some people differently on the basis of gender, race, religion, etc. <u>Sanchez v. Philip Morris Inc.</u>, 992 F.2d 244, 246-47 (10th Cir. 1993).  To prevail on a disparate treatment claim, Plaintiff must prove that the employer acted with a discriminatory intent or motive. <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1315-16 (10th Cir. 1999) (<u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>sub</u> <u>nom.</u> <u>by</u> <u>Boyler v. Cordant Techs., Inc.</u>, 316 F.3d 1137, 1140 (10th Cir. 2003)).   In an individual disparate treatment case, then, the question usually centers on motivation and discriminatory intent. <u>E.E.O.C. v. Flasher Co., Inc.</u>, 986 F.2d 1312, 1319-22 (10th Cir. 1992).  Under the Supreme Court's opinion in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), a Title VII Plaintiff must carry the initial burden of establishing a prima facie case of discrimination.  <u>Heim v. State of Utah</u>, 8 F.3d 1541, 1545 (10th Cir. 1993).  To establish this prima facie case, [Plaintiff] must show that: "(1) she is a member of the class protected by the statute; (2) she suffered an adverse employment action; (3) she was

qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." Id.

(1) Adverse Employment Action

The Department argues that Plaintiff has not suffered any adverse employment action.  In response, Plaintiff argues that the record shows retaliatory harassment, which, she argues, is recognized under Gunnell v. Utah Valley State College, 152 F.3d 1253 (10th Cir. 1998).[6]  Indeed, Gunnell makes it clear that retaliatory harassment can, if sufficiently severe, constitute an adverse employment action in a Title VII *retaliation* claim.  Id. at 1265.  See also Medina v. Income Support Division, 413 F.3d 1131, 1136-37 (10th Cir. 2005) (analyzing retaliatory harassment as an adverse employment action in the context of a retaliation claim); Stover v. Martinez, 382 F.3d 1064, 1071-72 (10th Cir. 2004) (same);  Rennard v. Woodworker's Supply, Inc.,  101 Fed. Appx. 296, 308 (10th Cir. 2004) (unpublished) (same).  Thus, the only adverse action claimed by Plaintiff concerns gender based or retaliatory harassment, rather than disparate treatment. Therefore, the retaliatory harassment she alleges is more properly addressed in connection with those claims, and her disparate treatment claim must fail.

(2) Disparate Treatment

Furthermore, even if Plaintiff had identified an adverse employment action for the purposes of a disparate treatment claim, Plaintiff has not identified specific similarly-situated individuals that could allow her to show  that "she was treated less favorably than others not in

---

[6]In her Response to the Department's Motion for Summary Judgment, Plaintiff abandoned any claim that the Department improperly failed to promote Plaintiff in 2004 or 2005, conceding that the Plaintiff failed to exhaust administrative remedies before bringing these claims.  See Pl. Resp. to Department's Motion for Summ. J. at 18-19.

the protected class," as required by the fourth element of the disparate treatment test.  See Heim, 8

F.3d at 1545.  The record, taken in the light most favorable to Plaintiff, demonstrates that

Defendant Sisneros treated *anyone* whom he did not favor, male or female, in a less than

professional manner.  For example, Plaintiff testified that she believed Sisneros tried to isolate her

from Pete Mileta because Sisneros "hated" Mr. Mileta.  Aragon Dep. at 13.  Additionally, Jessica

Sena testified in her deposition that Sisneros "had strong feelings against Mr. Berged," and that

"everything that could be done to hold Mr. Berged back from getting this raise or promotion that

could be done was being done to help hold him back."  Sena Dep. at 50.  In addition, Kenneth

Cordova testified that he was "in the doghouse," that he fell "out of favor," and that "he was no

longer part of the group."  Cordova Dep. at 42-44. Mr. Cordova also testified about a "heated

discussion" between Defendant Sisneros and a Mr. Gonzales.  Cordova Dep. at 19.  Since there is

evidence that Sisneros subjected men as well as Plaintiff to equally poor treatment, Plaintiff's

disparate treatment claim fails.

     (3) Discrimination on the Basis of Sex

     Moreover, the record, even when viewed in the light most favorable to Plaintiff, is

insufficient to show discrimination on the basis of Plaintiff's sex.  Plaintiff can only point to two

comments by Sisneros which arguably demonstrate  gender bias.  First, Plaintiff alleges that

Defendant Sisneros told her that "people [were] going to consider [her] a whore" for outside

socializing with male co-workers as a married woman. Aragon Dep. at 12, 15.  Next, Plaintiff

asserts in an affidavit that, in May, 1998, Defendant Sisneros denied Plaintiff's request for flex

time to attend a class during business hours, commenting that Plaintiff "should concern [herself]

more with being a mother and leave education to others." Aragon Affidavit of January 31, 2006, para. 33.

Isolated "stray remarks," which are unrelated to the adverse employment action complained of by Plaintiff, are insufficient to create a jury issue on discrimination.  Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994).  Taken v. Oklahoma Corporation Commission, 125 F.3d 1366, 1369 (10th Cir. 1997); Heim, 8 F.3d at 1546-47.

Assuming Sisneros made the two statements discussed above, they "are best characterized as stray remarks."  See Longmont, 14 F.3d at 531.   Plaintiff can show no connection between these two comments and any specific action taken against her.  See id.  Moreover, during the more than four years which Sisneros supervised Plaintiff, these are the only two comments Plaintiff can point to relating to her gender.  In an analogous Tenth Circuit case, a female plaintiff's male supervisor, in an angry outburst, exclaimed "Fucking women, I hate having fucking women in the office." Heim, 8 F.3d at 1546.  Shortly thereafter, the supervisor refused to permit the plaintiff to undertake a temporary field assignment. Id.  The Tenth Circuit distinguished between direct evidence, i.e., "statements showing an existing policy which itself constitutes discrimination," and indirect evidence, i.e., statements from which discriminatory motive might merely be *inferred*. Id.  The court then held that, although the supervisor's comment was "inappropriate and boorish, . . . [it did] not show  [the supervisor] acted with discriminatory intent, [rather,] only that he unprofessionally offered his private negative view of women during a display of bad temper at work." Id.  As in Heim,  Sisneros' stray remarks are insufficient to show that Sisneros created an abusive working environment because of Plaintiff's gender.  Instead, these isolated statements merely demonstrate a lack of professional judgment on the part of

Sisneros.  See id.; Deflon v. Danka Corp., Inc., 2001 U.S. App. Lexis 123, *4 (10th Cir. 2001)

(unpublished) (although defendant's conduct was "abusive and belittling," conduct was not shown

to be caused by gender).

Furthermore, Plaintiff herself testified that Sisneros' comment that "people [were] going

to consider her a whore" was an effort to isolate her from Pete Mileta, and was motivated by

Sisneros' hatred *for Pete Mileta.*  Aragon Dep. at 12-13.  This testimony demolishes the value of

this stray remark in establishing differential treatment on the basis of Plaintiff's gender.

To show the alleged acts and comments were motivated by Plaintiff's sex, Plaintiff also

offers testimony by her coworkers that Sisneros treated women differently than men,  See  Mileta

Dep. at 17; Cordova Dep. at 23, Sena Dep. at 55, had difficulty interacting and communicating

with some women,  E. Baca Dep. at 17; Salazar Dep. at 12, 18-19, and held some ideas about a

woman's place in the workforce, Cordova Dep. at 23.   Although Jessica Sena observed that

Sisneros assigned differential workloads to a man and woman in the department, she admits that

these two people held different positions.  Sena Dep. at 55. Other than this one example, all these

deponents struggled to identify specific instances in which women were treated differently,

Cordova Dep. at 23, and some also testified that they never heard Sisneros make any derogatory

comments about women. E.g., Sena Dep. at 55. Plaintiff's general and conclusory allegations of

disparate treatment between men and women in the workplace in her affidavit are also insufficient

to create a genuine issue of fact.  See Lujan v. National Wildlife Federation, 497 U.S. 871, 888

(1990) (non-movant cannot avoid summary judgment by "replac[ing] conclusory allegations of

the complaint . . . with conclusory allegations of an affidavit."); Ford v. West, 222 F.3d 767, 774

(to avoid summary judgment, party with the burden of proof must adduce *specific* evidence to

support allegations).  As for Sisneros' beliefs about women in the workplace, the Tenth Circuit

has held that mere evidence of personal bias is not tantamount to direct evidence of

discrimination.  Ramsey v. City and County of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990)

("Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a

part in a particular employment decision.").

      Indeed, a review of the record strongly suggests that, instead of women and men being

treated differently in the workplace, Plaintiff was in an environment marked by favoritism, social

cliques, and political maneuvering. It is true that several people testified that Sisneros instructed

them not to speak with or work with Plaintiff. See Aragon Dep. at 84; Gonzalez Dep. at 8, 12;

Cordova Dep. at  32-33, 42-44; Salazar Dep. at 9-11; 15; Sena Dep. at 8-9.  However, given

Carlos Gonzales' testimony that he was instructed not to talk to a number of people, both men

and women, Gonzales Dep. at 10, it appears that this activity was not a unique experience of

either the Plaintiff, or of women, as a group.  In addition, Erwin Baca testified that he was told

not to associate with "certain people," rather than just the Plaintiff. E. Baca Dep. at 29.   This

evidence tends to show a social setting marked by favoritism, but does not support a reasonable

inference of gender discrimination.  See Foster v. Dalton, 71 F.3d 52, 57 (1st Cir. 1995)

(disparate treatment due to cronyism does not violate Title VII); see also Neal v. Roche, 349 F.3d

1246, 1251 (10th Cir. 2003) (citing Foster). Rather, as Plaintiff indicated in her deposition, the

political environment in the workplace appeared to be fueled by warring "factions," without

regard to gender. Aragon Dep. at 96-97.

      Because  Plaintiff cannot demonstrate any disparate treatment she suffered would not have

occurred but for her sex, summary judgment is appropriate.

B. Hostile Work Environment

"To establish the existence of a hostile work environment actionable under Title VII, a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." Medina v. Income Support Division, 413 F.3d 1131, 1134 (10th Cir. 2005).

(1) Harassment based on Gender

A hostile work environment claim requires that the harassment (1) was based on gender or stemmed from gender animosity, and; (2) was pervasive or severe enough to alter the terms of employment. Witt v. Roadway Exp., 136 F.3d 1424, 1432 (10th Cir. 1998). As the above discussion makes clear, Plaintiff has shown no evidence of discrimination deriving from gender. Sexual harassment is a form of discrimination and where a plaintiff relies on the same evidence summary judgment may be appropriate on each claim. See, e.g., Cardenas v. Massey, 269 F.3d 251, 264 (3rd Cir. 2001); Brooks v. City of San Mateo, 229 F.3d 917, 930-31 (9th Cir. 2000); Minor v. Ivy Tech State College, 174 F.3d 855, 857 (7th Cir. 1999). Nothing in the 95 "facts" submitted by Plaintiff convinces this Court there is factual support for the harassment claim.

(2) "Severe or Pervasive" Discrimination

Even if Plaintiff could make a prima facie showing of gender based harassment, Plaintiff also fails to show evidence that would rise to the level of "severe or pervasive" discrimination required under the second prong of the hostile work environment test. In making this determination, the Court is to consider the "totality of the circumstances," including such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Chavez v. New Mexico, 397 F.3d 826, 832-33 (10th Cir. 2005). The activity must not only be subjectively perceived as creating a hostile and abusive environment, it must be such as to force an objective observer to reach such a conclusion. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993). Therefore, a showing of pervasiveness generally requires "more than a few isolated incidents." Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994). See also Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998).

Considering Plaintiff's complaints cover fifteen years, Plaintiff alleges a limited number of unpleasant occurrences in the workplace, which, she contends, are sufficient to demonstrate an environment "permeated with 'discriminatory intimidation, ridicule, and insult.'" See O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1102 (10th Cir. 1999). She submitted evidence that she moved offices a total of five times (Aragon Dep. at 63), was denied a promotion in 2004 (id. at 145-46), experienced a couple of instances of hostility from coworkers (id. at 124-25, 152-53), was not appropriately evaluated (id. at 136), was denied access to certain training (id. at 173-74), was excluded from meetings for some period of time (id. at 62), was assigned additional job responsibilities (id. at 60-61), found certain office items missing (e.g., id. at 46-47), was criticized in the presence of other coworkers (id. at 39, 91), was told that she might consider withdrawing from her position (id. at 39), and was subjected to a safety investigation (id. at 52).

(i) Conclusory Allegations

Plaintiff offers some of this evidence in the form of an affidavit, to support some general allegations of acts which, she claims, created a hostile work environment. However, most of the statements in the affidavit are too conclusory to substantiate Plaintiff's allegations. For example,

-11-

Plaintiff states that Sisneros continually harassed her, threw items at her, stared at her, declined to speak to her, and belittled her, Aragon Affidavit, paras. 1, 8, 15, and that men and women were treated differently. E.g., id. at paras. 7. 11, 12, 13, 23, 30.  Without specifics, which Plaintiff has failed to provide, these allegations are too conclusory to raise a genuine issue of material fact. Ford, 222 F.3d at 774 (evidence  must go beyond allegations in pleadings and designate specific facts); Anthony v. City of Clinton, 185 F.3d 873, 1999 WL 390927, *4 (10th Cir. 1999) (unpublished) (conclusory allegations that defendant "verbally assaulted" or "verbally harassed" plaintiff were insufficient to raise a genuine issue of material fact).

    (ii) Physically Threatening Environment

    One factor of the Chavez test is "whether [the conduct] is physically threatening or humiliating, or a mere offensive utterance." Chavez, 397 F.3d at 832-33.  Plaintiff's evidence is of the latter variety.   For example, Plaintiff alleges a few episodes of yelling and cursing by Sisneros. Aragon Dep. at 97-9; Aragon Affidavit paras. 8, 24, 25.   However, Plaintiff does not allege specific incidences that show a physically threatening environment in the workplace.  The testimony of other coworkers also fails to establish this.  See Mileta Dep. at 12 (Def. Ex. 6); Cordova Dep. at 11; Sena Dep. at 29; Madrid Dep. at 11, 14 (Def. Ex. 5). Indeed, the only specific incident referred to that was even arguably threatening was not at the office.  Plaintiff testified that, sometime in 2005, she happened to "run into" Sisneros in downtown Santa Rosa.  Aragon Dep. at 99.  She testified that Sisneros was "doing little antics" in his truck, and that she was worried that he might follow her.  Id. at 99-100.  This, however, does not seem to have been a work related interaction, and, in any event, does not appear to be "physically threatening," especially given that

Plaintiff never explained how the "antics" might be threatening, or that Sisneros did, in fact, follow her.

Plaintiff also alleged that Sisneros "stalked [her] door" at work. Id. at 183.   Her description of what happened does not reveal physically threatening conduct, however.  She merely alleges that Sisneros came by to say "good morning" and was often standing near Plaintiff's door.  Id.

(iii) Unreasonable Interference and Severity

Other factors to be considered under the Chavez test is "whether [the conduct] unreasonably interferes with an employee's work performance" and the severity of the conduct. Chavez, 397 F.3d at 832-33.  However, Plaintiff also complains of certain incidences from which she suffered no serious consequences. For example, Plaintiff points to testimony by her immediate supervisor, Kenneth Cordova, that Sisneros told him that he believed Plaintiff wasn't adequately performing at work, and, instead,  was spending too much time chatting with others in the workplace. Cordova Dep. at 19, 20-21.  Cordova testified that Sisneros also told him that Plaintiff "was a candidate for progressive discipline." Id. at 19.  Cordova testified that when he investigated and told Sisneros that he felt that it was not appropriate to discipline or fire Plaintiff, no further action was taken.  Id.

Plaintiff also complains that she was denied access to certain required training. Aragon Depo at 174. However, she admitted she was never demoted or subject to any disciplinary action for not completing that training.  Id.  In addition, Plaintiff complains that she was subjected to a safety investigation, but she admits that she never suffered any adverse consequence from such investigation. Id. at 52. Plaintiff also complains that Sisneros, in an interview with the OIG,

-13-

accused Plaintiff of "stealing time from the State."[7]  Pl. Resp. at 2, Fact #2; OIG notes (Ex. 25).
There is no evidence that OIG investigators pursued this matter.  These episodes, which resulted in
no adverse action taken against Plaintiff, did not unreasonably interfere with Plaintiff's work
performance. Cf. Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381 (10th Cir.1994) (no adverse
employment action where threat to subject teacher to heightened scrutiny was not carried out).

    The Court also notes that Plaintiff's other allegations do not rise to a level that would
unreasonably interfere with Plaintiff's work performance. Chavez, 397 F.3d at 832-33.  For
example, Plaintiff testified generally that she had difficulty getting pens and pencils (Aragon Dep.
at 88), that she was told not to move or rearrange furniture in her office (id. at 176), and that her
blinds were missing from her office (id. at 46-47).  Her office moves would not unreasonably
interfere with her work performance, as in some cases, she was simply moved across the hall or
next door.  See Aragon Dep. at 63-64; J. Baca Dep. at 12-13. Cf. Heno v. Sprint/United
Management Co., 208 F.3d 847, 857 (10th Cir. 2000) (in the context of a Title VII retaliation
claim, moving of plaintiff's desk, among other conduct, did not affect employment conditions such
as to rise to the level of an adverse employment action).  Although Plaintiff argues that she did not
have access to certain files and that she was therefore unable to perform "to the best of her ability,"
she never asserts that access to these files were essential to her daily duties or otherwise explains
how not having access to these files interfered with her job performance.  Aragon Dep. at 65, 87.

---

[7]The Court notes that these statements were recorded in a "Confidential Investigation
Report," so it is unclear whether Plaintiff knew about this while Sisneros was her supervisor. If
she was not aware of this statement, it could not contribute to a subjective perception of a hostile
work environment. Mason v. Southern Illinois University at Carbondale, 233 F.3d 1036, 1046
(7th Cir. 2000).

Plaintiff also complains about having been assigned additional job responsibilities. Id. at 60-61. She asserts that her additional duties took up 50% of her time, id. at 68, and that they were "inappropriate," since she was assisting departments who already had staff. Id. at 133-34. However, Plaintiff concedes that the support staff of the other departments were not sufficient to handle their workload, id. at 134. In addition, Plaintiff testified that she was never assigned any duty that violated department policy, that her additional duties were of a serious nature, as opposed to mere "busy work," that she was able to complete such assignments in a competent and timely fashion, and that the assignments were a "learning experience" for her. Id. at 169-171. As far as these additional work duties are concerned, mere alterations of job responsibilities do not rise to the level of unreasonable interference with job performance. See Stuart v. General Motors Corp., 217 F.3d 621, 633 (8th Cir. 2000) (where plaintiff "was able to perform all of her duties and work all shifts unimpeded by the alleged harassment," conduct did not affected a term, privilege, or condition of her employment); cf. Tran v. Trustees of State Colleges in Colorado, 355 F.3d 1263, 1268 (10th Cir. 2004) (alteration of job responsibilities did not rise to level of adverse employment action); Heno, 208 F.3d at 857 (same); Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998) (same); Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997) (same).

Finally, the Court notes that Plaintiff also testified that she was not aware of any action Sisneros ever took that resulted in any disciplinary actions taken against her, and that he never caused her to be demoted, or to have her pay reduced. Aragon Dep. at 185.

Therefore, it appears that Plaintiff's complaints do not rise to an environment that was severe or that unreasonably interfered with Plaintiff's work performance.

(v) Frequency of Conduct

Finally, the Court looks to the frequency of the alleged conduct to determine if such conduct is sufficiently pervasive to support a finding of a hostile work environment.  See Chavez, 397 F.3d at 832-33.  Because the Plaintiff's experiences occurred over a total of fifteen years, these allegations, many of which do not identify particular acts or dates, could not support a finding of pervasiveness.  See Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998) (gender based incidents occurring sporadically over period of three years not sufficient to support hostile work environment claim); Sprague v. Thorn Americas, Inc.,129 F.3d 1355, 1366 (10th Cir. 1997) (five incidents, occurring over the space of sixteen months, did not create hostile work environment).

(vi) Treatment of Other Women

To the extent Plaintiff would attempt to show a hostile work environment based on the treatment of other women, the Court notes that the evidence is flimsy.  See White v. New York City Bd. of Educ., 99 F.3d 402,*1 (2nd Cir. 1995) (unpublished).  Annabelle Salazar testified that Sisneros would be "kind of rude" to women at the reception desk, and that, when they asked questions, he would not answer them or "just tell them something and turn around and walk off." Salazar Dep. at 18-19.  Jessica Sena testified that Sisneros took a photo with her when she won an award, but that he "didn't even bother shaking [her] hand." Sena Dep. at 25.  Sena also testified to an incident where Sisneros "reprimanded" her in a "totally uncalled for . . . tone of voice." Id. at 28-29.

Even when added to Plaintiff's allegations, there is simply not enough from which a jury could find severe or pervasive discrimination in the workplace.  See Minor v. Ivy Tech State

College, 174 F.3d 855, 858 (7th Cir. 1999) ("It is not enough that a supervisor or coworker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor.").

### C. Retaliation

Plaintiff also alleges the Department violated Title VII by permitting coworker hostility and retaliation in the workplace.  "To establish a *prima facie* case of retaliation, [Plaintiff] must show that: (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action." Cole, 43 F.3d at 1381.

In this case, it is undisputed that Plaintiff's 2001 and 2003 EEOC complaints constituted participation in a Title VII proceeding.  However, there is a dispute over whether Plaintiff suffered any adverse employment action.  Plaintiff has conceded that any claim for failure to promote is foreclosed because she has not exhausted her administrative remedies.  Pl. Resp. to Dep't. Mot. for Summ. J. at 18-19.  See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 (2002).  Alternatively, Plaintiff correctly argues that retaliatory harassment may constitute an adverse employment action if sufficiently severe.  Gunnell, 152 F.3d at 1265.

### (1) Causation

To support a claim for retaliatory harassment, Plaintiff must demonstrate a "causal connection between the protected activity and [any] adverse employment action." Chavez v. New Mexico, 397 F.3d 826, 839 (10th Cir. 2005) (citing Pentry, 155 F.3d at 1264).  Plaintiff's direct evidence of retaliation is marginal, both with respect to Sisneros and as to other coworkers.

(i)Direct Evidence: Supervisors

In an effort to illustrate causation, Plaintiff points to her deposition testimony that Sisneros yelled at her for "causing all these investigations," but her deposition testimony is clear that Sisneros was referring to investigations from the New Mexico Office of the Inspector General ("OIG"), not the EEOC.  Aragon Dep. at 98. Thus, this comment is not probative on the issue of whether Plaintiff was retaliated against for participating in conduct protected by Title VII.

Next, Plaintiff alleges that, in or around November, 2002, Sisneros showed a prisoner of war film at a mandatory meeting, and remarked that "the snitch is the one who gets killed."  In light of the extensive testimony that Sisneros was, as a supervisor, highly concerned about employee loyalty,[8] this incident, which does not reference Plaintiff's EEOC complaint filed nearly a year before, is insufficient to show retaliation for conduct protected under Title VII.  Taken v. Oklahoma Corporation Commission, 125 F.3d 1366, 1369 (10th Cir. 1997)  (statement which does not refer to plaintiff or challenged employment action does not show necessary nexus); cf. Longmont, 14 F.3d at 531-32 (stray remarks not directed toward plaintiff, her position, or adverse employment action do not show sufficient evidence of intent or motivation to create a jury issue).

Finally, Plaintiff points to Mr. Cordova's testimony that, when Sisneros was upset with people, he would "target" them by moving their office.  Cordova Dep. at 25. Mr. Cordova did not, however, say that Sisneros had retaliated against Plaintiff in this manner or that he had any knowledge that Sisneros had a desire to retaliate against Plaintiff for filing her EEOC complaint. Furthermore, it is worth noting that (1) even the Plaintiff herself testified that she did not believe that the last two office moves were retaliatory, Aragon Dep. at 66-67, and (2) that one other office

---

[8]See Aragon Dep. at 96-97; Cordova Dep. at 24.

-18-

move seems to have been made in an attempt to fairly allocate office space. See Salazar Dep. at 11-12 (Plaintiff moved offices because another woman felt it was unfair that Plaintiff had her own office while complainant did not).

There is also no direct evidence of retaliation in the record for one of Plaintiff's more serious allegations. Although Plaintiff alleges she was discriminated against by being denied promotions *twice*, once in 2004 and 2005,[9] the portions of the record submitted to the Court only discuss the alleged denial of 2004. Pl. Resp. at 4, Fact #14; Aragon Dep. at 145-46; Cordova Dep. at 37; E. Baca Depo at 28-29.[10]   Plaintiff was not qualified for that position under the published vacancy notice, as she did not possess a commercial driver's license ("CDL").  Aragon Dep. at 145-46.  Although Plaintiff alleges that the requirement of a CDL was added out of some hostility towards her, she has adduced no evidence to show any discriminatory animus, retaliatory motive, or other irregularities in the hiring process. Aragon Dep. at 186 (Plaintiff has no evidence of reprisal in the hiring process); Cordova Dep. at 37-38 (deponent "heard" that Plaintiff was denied promotions through "rumor mill"); E. Baca Dep. at 28 (deponent has no knowledge of why promotion was denied).  In addition, while Plaintiff relies heavily on the involvement of Abel

---

[9]Plaintiff has conceded that any denials of promotion were distinct acts that Plaintiff should have addressed in an EEOC charge in order to claim them as adverse employment actions in this Court. Pl. Resp. to Dep't Motion for Summ. J. at 18-19 (conceding that promotions should have been brought in an EEOC charge); Morgan, 536 U.S. at 114, 122 (requiring, under 42 U.S.C. § 2000e-5(e)(1), that plaintiffs exhaust administrative remedies for discrete discriminatory or retaliatory acts); Martinez, 347 F.3d at 1210 (10th Cir. 2003) (same).  Plaintiff nevertheless argues that these alleged denials can serve as "background evidence" for her claim that she suffered an adverse employment action in the form of retaliatory harassment.  The law supports this assertion.  See Morgan, 536 U.S. at 115. However, as discussed below, even when this is considered as "background evidence," there is not sufficient evidence to show a pattern of retaliatory harassment.

[10]It is unclear whether Mr. Baca's testimony concerns the 2004 or 2005 incident.

Esquibel, whom she claims drafted the CDL requirement and informed her that her lack of a CDL was the reason she was not promoted, Plaintiff provides the Court no testimony from Mr. Esquibel.  Aragon Dep. at 146-48.

Plaintiff also alleges one action which, taken by itself, arguably rises to the level of an adverse employment action.[11]  Plaintiff complains that she was inappropriately evaluated, and, as a result, denied certain pay increases.  Chavez, 397 F.3d at 838; Gillis v. Georgia Dep't of Corrections, 400 F.3d 883, 887-88 (11th. Cir. 2005).  However, Plaintiff has not adduced sufficient evidence from which a jury could reasonably infer causation between the activity protected by Title VII and her evaluations.

For example, there is no evidence that Sisneros improperly lowered her evaluation ratings, Aragon Dep. at 180-82.  Indeed, Plaintiff does not suggest that Sisneros had involvement in her ratings, Aragon Dep. at 136, and there is no evidence that Mr. McDonald, Plaintiff's immediate supervisor at the time, had any retaliatory intent, or had made any comments or took any actions which might indicate that her ratings were influenced by an effort to retaliate against her.  The Plaintiff does not believe Sisneros actually told McDonald to lower evaluation ratings and does not accuse McDonald of retaliating against her.  Aragon Dep. at 46-47, 136. At most, then, Plaintiff's testimony suggests that Sisneros would be displeased if Plaintiff's ratings were too high; however, there is nothing in the record to suggest a retaliatory motive as the cause of such displeasure.  Id.

---

[11]This Court again notes that these incidents would appear to be discrete retaliatory acts which, Plaintiff concedes, must be brought in an EEOC charge in order for Plaintiff to preserve the right to complain of these acts as separate adverse employment actions in this Court.  See supra note 9.  Even when considered as background evidence, and taken together with Plaintiff's other complaints, the evidence is insufficient to demonstrate the required level of severity for an adverse employment action to exist.

<u>(ii) Direct Evidence: Other Coworkers</u>

Plaintiff has submitted evidence of two specific incidences of coworker hostility.  However, the record provides no basis whatsoever for permitting an inference that these employees were retaliating on the basis of Plaintiff's protected activity.  In one instance, a coworker, whom Plaintiff concedes was not retaliating against her, was less than cordial out of disappointment of having to share his office, Aragon Dep. at 124-25; in another, Plaintiff alleges the hostility arose out of an effort of a certain employee to obtain Sisneros' favor, Aragon Dep. at 152-53 (coworker seeking Sisneros' favor, but Plaintiff cannot say that coworker was specifically ordered by Sisneros to act in a hostile manner).

<u>(iii) Indirect Evidence of Causation</u>

Because Plaintiff's offered "direct evidence" is too weak to support a finding that any adverse actions were caused by a retaliatory motive, Plaintiff must therefore rely on indirect evidence, i.e., an inference of retaliatory motive based on closeness in time between Plaintiff's claim and adverse conduct.

To survive a motion for summary judgment on her retaliation claim, Plaintiff must show some evidence of retaliatory acts occurring within the relevant time frame.  There are two considerations that establish the window of time from which Plaintiff must adduce evidence of retaliatory acts.  First, any conduct that occurred prior to Plaintiff's 2001 filing is not relevant, as it would not be reasonable to infer a retaliatory motive on the part of a defendant if the Plaintiff had not yet engaged in any protected conduct.  <u>See</u> <u>Peterson v. Utah Dep't of Corrections</u>, 301 F.3d 1182, 1188 (10th Cir. 2002) (employer cannot retaliate if it is not aware of any protected activity).  Secondly, the Supreme Court has held that a plaintiff who relies solely upon "mere temporal

proximity between an employer's knowledge of protected activity and an adverse employment

action as sufficient evidence of causality to establish a prima facie case... [must demonstrate] that

the temporal proximity [is] 'very close.'" Clark County School Dist. v. Breeden, 532 U.S. 268,

273 (2001) (citing O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)).

Indeed, the Clark Court cited a Tenth Circuit case, Richmond v. ONEOK, Inc., 120 F.3d 205, 209

(10th Cir. 1997), which held that a lapse of three months between the protected activity and the

adverse employment action was insufficient, standing alone, to satisfy the element of causation for

the prima facie case. Id.; see also Duran v. State of New Mexico, 143 F. Supp. 2d 1278, 1284

(D.N.M. 2001) (using three month period as a guideline to determine whether prima facie evidence

of causation existed on motion for summary judgment); Padilla-Owens v. Sandia Nat.

Laboratories, 2003 WL 24153912, *9 (D.N.M. Nov. 25, 2003) (slip opinion) (same). Therefore,

to show evidence sufficient to go to trial on a retaliation claim, Plaintiff must rely on events and

occurrences that occurred after Plaintiff's EEOC complaint in December, 2001, and some  point in

time "very close" to the time of filing of either the December, 2001 or October, 2003 complaints.

       However, virtually all of Plaintiff's evidence lacks the necessary temporal nexus. Plaintiff

alleges Sisneros  made certain comments *sometime* during 2001, but is not clear whether these

comments were made *after* Plaintiff filed her December, 2001 complaint.  Pl. Resp. at 5, Fact  #26;

Aragon Affidavit at paras. 21, 32.  Plaintiff also complains of the episode where Sisneros

commented that people might think of her as a "whore" if her outside conduct continued, but this

is another incident with no apparent time frame. Pl. Resp. at 3, Fact # 9; Aragon Dep. at 12, 15.

       Some other evidence offered by Plaintiff is irrelevant, having occurred prior to her

December, 2001 EEOC Complaint.  See Stover, 382 F.3d at 1072 (conduct occurring  before

plaintiff filed EEOC complaint could not be retaliatory).    For instance, Plaintiff offers her

testimony that Sisneros instructed Mr. Cordova, her immediate supervisor at the time, to "find

ways to fire [her]."  Pl. Resp. at 2, Fact #3; Aragon Dep. at 89-90.  Although the Plaintiff earlier

mentioned the time frame of October, 2001, the record is not clear when this statement occurred.

Aragon Dep. at 89-90 (mentioning October, 2001 time frame before discussion of this incident);

Cordova Dep. at 19 (no time frame).  This, of course, is before Plaintiff's first claim and therefore

cannot support retaliation.  In addition, Plaintiff also testified her office was moved twice before

she ever filed her first complaint.  Aragon Dep. at 63-64.  In addition, Plaintiff's allegation that Mr.

Sisneros cursed at her while on a ride to Santa Fe with other coworkers is not relevant to her

retaliation claim, having occurred in 1998.  Pl. Resp. at 3, Fact  #8; Pl. Resp. at 4, Fact #18;

Aragon Dep. at 26-27.  Similarly, in 1998, Plaintiff was transferred to another department in the

district so Sisneros was no longer her supervisor.  Pl. Resp. at 8, Fact # 25; Aragon Affidavit at

para. 17.  Plaintiff also alleges that Sisneros once criticized her for wearing a dress, and told her

not to go the bathroom during a meeting; however, this occurred in 1990. Pl. Resp. at 3, Fact #9;

Aragon Dep. at 9, 11.

        Other evidence offered by Plaintiff occurs so long after the protected conduct that it is

difficult to reasonably infer causation.  For example, Plaintiff testified that her office was moved in

September or October of 2002. Aragon Dep. at 64.  This move occurred in the range of nine to ten

months from Plaintiff's December, 2001 complaint and Plaintiff offers no evidence it was caused

by a retaliatory motive on the part of the Department or Sisneros.  Although Plaintiff testified that

Sisneros did not cause the moves in September 2001 and 2005 and that she did not believe them to

be retaliatory, id. at 66-67, the Court notes that Plaintiff's move in September, 2003 is almost two

years removed from Plaintiff's 2001 Complaint.[12] Id. at 65-66. The same is true of Plaintiff's

September, 2005 move, which occurred nearly four years after Plaintiff's 2001 complaint, and

nearly two years after Plaintiff's October, 2003 complaint. Id. Plaintiff's allegation that she was

improperly denied a promotion in the Spring of 2004 suffers from the same problem. Aragon Dep.

at 145-46.

Plaintiff, therefore, has not adduced sufficient evidence to support a prima facie finding of

causality.  On this basis also, then, summary judgment is appropriate on Plaintiff's retaliation

claims.


(2) Adverse Employment Actions

Nevertheless, even if Plaintiff could adduce evidence sufficient to show retaliatory motive,

the Court again notes that Plaintiff does not adduce evidence of an event which would rise to the

level of an "adverse employment action" which can support her claim.  Plaintiff argues the

evidence shows a pattern of retaliatory harassment.  However,  most of Plaintiff's complaints of

retaliation, even if caused by a retaliatory motive, are simply not sufficiently severe to establish a

pattern of retaliatory harassment.

Although the Tenth Circuit liberally defines an adverse employment action, it "does not

extend to a mere inconvenience or an alteration of job responsibilities." Heno, 208 F.3d at 857

(internal quotations omitted);  Sanchez, 164 F.3d at 532 (citation omitted). Indeed, "[a]n adverse

employment action 'must be materially adverse to the employee's job status . .. [An] adverse

_____

[12]This move is also not relevant as evidence of retaliation for Plaintiff's October, 2003
complaint, having occurred a full month before Plaintiff ever filed that complaint.

action must amount to a *significant change* in employment status, such as firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits."  Duncan v. Manager, 397 F.3d 1300, 1314 (10th. Cir. 2005)

(emphasis added).  In Heno, the Court noted that,

> Viewed in the light most favorable to the plaintiff, Ms. Heno showed that (1) her desk was
> moved to a different location; (2) her telephone calls were monitored; (3) Mr. Libby and
> other employees acted in a "chilly" manner towards her, which made her feel isolated; (4)
> the Human Resources Department refused to further investigate her complaint once they
> found out she had filed an EEOC complaint; and (5) Mr. Libby suggested that she might
> wish to transfer to a different Sprint department because the inside sales department was
> shifting to a commission format on which Ms. Heno had previously struggled.

This, the court then held, was insufficient to support a finding of an adverse employment action in

the context of a Title VII retaliation claim. Heno, 208 F.3d at 857-58.

Similarly, this Court also finds that Plaintiff's allegations are insufficient to support a

finding of an adverse employment action in this case. To show retaliatory harassment, Plaintiff

must make a showing of severity comparable to that necessary to allege a claim for a hostile work

environment. Akers v. Alvey, 338 F.3d 491, 498 (6th Cir. 2003); see Stover, 382 F.3d at 1075

(retaliatory harassment may constitute adverse employment action for purposes of retaliation claim

only if sufficiently severe).   The Court has already found that there is insufficient evidence to

support a claim for a hostile work environment, and there is even less relevant evidence adduced in

support of Plaintiff's retaliatory harassment claim.  Therefore, summary judgment is also

appropriate on Plaintiff's retaliatory harassment claim.

D. Faragher Defense

In light of the Court's ruling on the Title VII claim, this Court need not address the Department's arguments on the applicability of the defense relying on <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998).

<u>II. New Mexico Human Rights Act Claims</u>

Plaintiff asserts claims against both the Department and Sisneros under the New Mexico Human Rights Act,  NMSA § 28-1-7.[13]  "Plaintiff's burden of establishing a prima facie case under the New Mexico Human Rights Act . . . is actually identical to his burden under Title VII."  <u>Gioia v. Pinkerton's Inc.</u>, 194 F. Supp. 2d 1207, 1220 (D.N.M.2002) (citing <u>Cates v. Regents of the New Mexico Institute of Mining & Technology</u>, 954 P.2d 65, 70 (N.M.1998)) (internal citations omitted); <u>see</u> <u>also</u> <u>Trujillo v. Board of Educ. of Albuquerque Public Schools</u>, 377 F. Supp. 2d 1020, 1024 (D.N.M. 2005).

Although Sisneros moved for summary judgment "on all the claims" against him, Sisneros Motion for Summ. J. at 1, and the Department moved generally for "summary judgment in its favor," neither Defendants nor Plaintiffs explicitly addressed the New Mexico Human Rights Act claims in their memoranda supporting their motions for summary judgment.  Because Plaintiff's burdens under the New Mexico Human Rights Act and Title VII are identical, Plaintiff was on notice to provide all of its evidence relevant to the New Mexico Human Rights Act claim.  A District Court may grant summary judgment  "[s]o long as 'the losing party was on notice that [it] had to come forward with all of [its] evidence.'"  <u>First American Kickapoo Operations, L.L.C. v.</u>

---

[13]The New Mexico Supreme Court has held that, unlike under Title VII, individual employees may be liable under the New Mexico Human Rights Act.  <u>See</u> <u>Sonntag v. Shaw</u>, 22 P.3d 1188, 1193 (N.M. 2001).

Multimedia Games, Inc., 412 F.3d 1166, 1170 (10th Cir. 2005) (quoting Ward v. Utah, 398 F.3d

1239, 1245-46 (10th Cir. 2005).  In that case, the court held that "[s]ince [defendant's] . . . motion

for summary judgment was argued on precisely the grounds ultimately adopted by the district

court, [plaintiff] was on notice to provide all of its evidence relevant to this argument." Id.

      Having found that summary judgment is appropriate on Plaintiff's Title VII claim, the

Court will also enter summary judgment on Plaintiff's claims under the New Mexico Human Rights

Act.

      The Court also notes that Plaintiff cannot assert her claim under §1983 based on retaliation

under the New Mexico Human Rights Act, since Plaintiff did not name Sisneros as a respondent in

her NMHRA complaint.  See Ex. 1 (Plaintiff's 10/08/03 NMHRA/EEOC complaint).  In

neglecting to name Sisneros in this complaint, she failed to exhaust her administrative remedies

against him, as required by New Mexico law.  Sonntag v. Shaw, 22 P.3d 1188, 1193 (N.M. 2001)

(" In neglecting to name [defendant] personally, [plaintiff] failed to exhaust her administrative

remedies against him.").

      Because the Court will grant summary judgment on the Human Rights Act claim against

Sisneros, it is unnecessary for the Court to consider Sisneros' defense of qualified immunity.

Sisneros Reply at 8.

      III. Equal Protection Claim Under §1983

      The Fourteenth Amendment to the Constitution of the United States provides that "[n]o

state shall . . . deny to any person within its jurisdiction the equal protection of the laws."   U.S.

CONST. amend. XIV.   The Tenth Circuit has recognized that sexual harassment by a state actor

can constitute a violation of the equal protection clause, actionable under 18 U.S.C. §1983. See

Murrell v. School District No. 1, 186 F.3d 1238, 1249, 1251 (10th. Cir. 1999); Starrett v. Wadley, 876 F.2d 808, 814 (10th. Cir. 1989).

"For [a plaintiff] to succeed with any of her statutory claims of . . . sex discrimination and with her constitutional equal protection claim brought under § 1983, she must ultimately prove the essential element of intentional discrimination."  Lewis v. City of Ft. Collins, 903 F.2d 752, 755 (10th. Cir. 1990).  In this case, Plaintiff must show sufficient evidence of a § 1983 claim, i.e., the same evidence that would be necessary to show a violation of the underlying constitutional violations. Id. at n.1.   In particular, Plaintiff must show purposeful discrimination, since this is an essential element of an equal protection violation. Id. (citing Batson v. Kentucky, 476 U.S. 79, 93 (1986)).

In proving the element of intentional discrimination, "Plaintiff has the 'burden to show with particularity facts and law establishing the inference that defendant violated a constitutional right.'" Abeyta By and Through Martinez v. Chama Valley Independent School Dist., No. 19, 77 F.3d 1253, 1255 (10th Cir. 1996).  For substantially the same reasons as those set forth in the Title VII analysis, this Court finds that Plaintiff has not adduced sufficient evidence from which a jury could find that Defendant Sisneros intentionally discriminated against Plaintiff on the basis of her sex. See Thomas v. Board of Education, 1998 WL 892295, *1 (10th Cir. 1998) (unpublished) (§1983 equal protection claim failed to survive summary judgment where plaintiff could not demonstrate sufficient evidence of intentional discrimination in support of Title VII claim).   Therefore, this Court will also grant summary judgment on this claim.

In light of the Court's disposition of the §1983 claim against Sisneros, it is unnecessary for the Court to consider Sisneros' defense of qualified immunity.

IV. First Amendment Claims

Plaintiff also alleges that she was retaliated against because she exercised her right to freedom of speech.  The Supreme Court has adopted a test to determine when the First Amendment forbids a governmental employer from retaliating against a public employee for certain speech.  Connick v. Myers, 461 U.S. 138, 146 (1983).  Under this test, employees' speech is protected if it touches on a matter of public concern.  Id. at 146; Martin v. City of Del City, 179 F.3d 882, 886 (10th Cir. 1999).  The Tenth Circuit has explained that the "public concern" test applies under First Amendment claims, whether based on the right of freedom of speech or the right to petition for redress of grievances.[14] Martin, 179 F.3d at 888.

To show that Plaintiff's speech was on a matter of public concern, Plaintiff must show that she spoke as a citizen, rather than as an employee.  David v. City and County of Denver, 101 F.3d 1344, 1355 (10th Cir. 1997) (citing Connick v. Myers, 461 U.S. at 147).  "[S]peech pertaining to a governmental agency's 'discharg[e] [of] its governmental responsibilities' ordinarily will be regarded as speech on a matter of public concern, while speech pertaining to internal personnel disputes and working conditions ordinarily will not be so regarded."  Woodward v. City of Worland, 977 F.2d 1392, 1403 (10th Cir. 1992) (citing Connick v. Myers, 461 U.S. 138, 148 (1983)).  Whether speech is on a matter of public concern is a question of law for this Court, Baca v. Sklar, 398 F.3d 1210, 1219 (10th Cir. 2005), and the Court must look to the "'content, form, and context of a given statement, as revealed by the whole record'" to make this determination.

---

[14]Plaintiff's Counsel has submitted jury instructions regarding the right to petition for grievances, although the complaint or the briefs filed to date do not seem to discuss this theory. Because of the Tenth Circuit's holding in Martin, however, whether the speech was on a matter of public concern is relevant whichever theory Plaintiff seeks to assert under the First Amendment.

David, 101 F.3d at 1355 (quoting Connick, 461 U.S. at 147-48).  This Court will now consider

each of Plaintiff's statements in turn.

Internal Dialogue

Communications directed at employers are protected under the First Amendment when the

statements relate to matters of public concern.  Baca, 398 F.3d at 1218.   When considering the

content, form, and context of a statement, courts have often looked to the motivation of the

speaker.  Baca, 398 F.3d at 1219 (motivation is "important factor" in analysis); Lighton v. Univ. of

Utah, 209 F.3d 1213, 1224 (10th Cir. 2000) (courts "may focus on the motive of the speaker and

whether the speech is calculated to disclose misconduct or merely deals with personal disputes and

grievances unrelated to the public's interest); Conaway v. Smith, 853 F.2d 789, 797 (10th

Cir.1988) ("Courts have focused on the motive of the speaker . . ." ).  In other words, the courts

have considered whether the employee is attempting to inform the public of illegal systemic

discrimination or air her own alleged abuse.  David, 101 F.3d at 1357.  The record discloses that

whenever Plaintiff complained to others in the workplace, she was addressing her own personal

grievances.   During his interactions with Plaintiff, for example, Ernie Padilla testified that Plaintiff

told him she "felt that she was being harassed on the job, that she was being mistreated," that "she

had been locked out of her office [and] was being monitored," that her job duties were changed,

and that an associate "was being told things about her."  Padilla Dep. at 23, 24, 27.

Plaintiff also testified that she verbally complained to three of her supervisors  and two

coworkers during her tenure at the Department.  Aragon Dep. at 86.  Plaintiff complained to Peter

McDonald, her supervisor, regarding her office relocation, not having a key to her office,  being

isolated from her coworkers, and difficulty getting supplies.  Id. at 87.  Plaintiff also complained to

Ken Cordova. Plaintiff testified that she complained about ". . . what I was doing right, what could I do better, why I was being treated the way I was . . . [and] what I could do to just become a better employee if that's what was causing all of this retaliation or all of this bad treatment." Id. at 89.  Plaintiff also complained to Hank Madrid and John Baca, her coworkers, regarding her personal treatment. Id. at 92-93.

Although Plaintiff testified that she and her supervisor, Delia Garcia, complained about gender discrimination to each other (id. at 90-92), there is nothing that indicates this was part of an attempt to "disclose[] any evidence of corruption, impropriety, or other malfeasance on the part of . . . officials," Hardeman v. City of Albuquerque, 377 F.3d 1106, 1114 (10th Cir. 2004), or otherwise "pertain[ed] to a governmental agency's 'discharg[e] [of] its governmental responsibilities,'" Woodward v. City of Worland, 977 F.2d 1392, 1403-04 (10th Cir. 1992).  In fact, Plaintiff testified that she did not complain to anyone about Delia Garcia's treatment  (Aragon Dep. at 92), and there is no testimony that she ever complained about the treatment of Jessica Sena, the only other woman she identifies that was allegedly discriminated against by Sisneros, id. at 83-93.

Plaintiff attempts to avoid these problems by filing an affidavit with the general and conclusory allegation that Plaintiff "complained about . . . the hostile work environment that [Sisneros] was creating for [herself], the department and women in the department."  Aragon Affidavit at para. 2.  This conclusory allegation, however, does not meet Plaintiff's burden to respond to a motion for summary judgment with specific evidence.  See Lujan, 497 U.S. 871, 888 (1990) (non-movant cannot avoid summary judgment by "replac[ing] conclusory allegations of the

complaint . . . with conclusory allegations of an affidavit."); Ford, 222 F.3d at 774 (evidence must go beyond allegations in pleadings and designate specific facts).

Thus, in all the evidence  before the Court regarding these complaints, there is no evidence that Plaintiff ever complained to anyone about anything other than her own personal concerns; in other words, there is no evidence of anything in any of these statements regarding general discrimination against women in the workplace.  See Woodward, 977 F.2d at 1404.  Like the speech in Woodward, Plaintiff's speech was essentially intended to communicate that she personally was being "subjected to sexual harassment and [she] wanted it to stop."  Id. at 1403-04.  As in Baca, this Court finds that the record demonstrates that Plaintiff made statements to others in the workplace "solely for personal reasons, and not to expose [the] employer's wrongdoing to public scrutiny."  Baca, 398 F.3d at 1219 (affirming district court's grant of summary judgment); see Morgan v. Ford, 6 F.3d 750, 755 (1993) (where plaintiff's expressions "did not relate her concerns about sexual harassment to the public . . . or attempt to involve the public in any manner," speech was not on matter of public concern); cf. Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir. 1987) (where employee intended content of conversations regarding personal disputes to remain confidential, statements were not on a matter of public concern).

EEOC Complaints

Plaintiff's EEOC complaints appear to be similarly limited to Plaintiff's own personal grievances.  That is to say, there is nothing in either of Plaintiff's EEOC complaints that refers to the treatment of anyone other than the Plaintiff.  In David, the Tenth Circuit addressed a situation similar to the case at bar, where a Plaintiff had filed two EEOC Complaints alleging "that she has been personally subjected to sexual harassment [and] retaliation."  David, 101 F.3d at 1356.  In

David, Plaintiff's allegations "focus[ed] on the conditions of her own employment," and the EEOC complaints did not "allege that other employees have been subjected to harassment or retaliation or that the harassment and retaliation has interfered with the Department's performance of its governmental responsibilities." Id. Under such circumstances, the Tenth Circuit held that the EEOC Complaints did not constitute speech on a matter of public concern.  Because the EEOC Complaints in the instant case cannot be distinguished from those at issue in David, this Court follows David in holding that Plaintiff's EEOC complaints were merely personal grievances, rather than protected speech on a matter of public concern.

At a hearing before this Court on February 27, 2006, Plaintiff's counsel argued that a complaint of a hostile work environment is necessarily a claim of general discrimination, as a hostile work environment impacts others in the workplace.  However, logic dictates that even where more than one person is subjected to a hostile work environment, an employee's complaints can certainly focus only to her own treatment.  Moreover, the law of the Circuit recognizes this fact.  In David, the Tenth Circuit declined to recognize "a rule that allegations of sexual harassment inherently involve matters of concern under the Connick standard." Id. at 1357. Indeed, in the specific case of sexual harassment by way of a hostile work environment, it is clear that a hostile work environment can be directed at only one individual. See generally Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 76-77 (1998) (plaintiff singularly subjected to hostile work environment).

Therefore, the Court must examine Plaintiff's speech to see if there is evidence that Plaintiff was complaining of a *generic* hostile work environment.  See Worley v. Board of County Commissioners of Park County, 44 Fed. Appx. 892, 895 (10th Cir. 2002) (speech was on a matter

-33-

of public concern where speech complained of harassment of others);  Woodward, 977 F.2d at

1404 (general allegations of discrimination against others in the workplace insufficient to rise to

the level of speech on a matter of public concern);  Saulpaugh v. Monroe Community Hosp., 4

F.3d 134, 143 (2nd Cir. 1993) ("Had [plaintiff's] complaints to her supervisors implicated

system-wide discrimination they would have unquestionably involved a matter of 'public

concern.'").  In an affidavit filed with her 2003 EEOC complaint, Plaintiff alleges that "I have been

forced to endure a hostile work environment."  See Aragon Affidavit (October 8, 2003). Given

that her allegation of a hostile work environment is plainly specific to Plaintiff, and the general

context of the complaint and affidavit also addresses Plaintiff's own treatment, rather than that of a

group, this Court finds that Plaintiff's complaint of a hostile work environment was a matter of

private concern.  See Saunders v. Hunter, 980 F. Supp. 1236, 1243-44 (M.D.Fla. 1997) (where

plaintiff's complaints of a hostile work environment were "driven by her personal concern to

improve her own employment conditions," speech was not on  a matter of public concern);

Riedinger v. D'Amicantino, 974 F. Supp. 322, 330 (S.D.N.Y. 1997) (where "the facts . . . d[id] not

support a finding that plaintiff's complaints [regarding a hostile work environment] were motivated

by or dealt with anything other than her individual employment situation," speech was not on a

matter of public concern).

    1998 Lawsuit

    At the hearing before this Court, Plaintiff's counsel argued that this case is distinguishable

from other cases involving EEOC complaints because Plaintiff filed a federal court action in 1998.

However, Plaintiff never asserted her 1998 court action as a basis for protected speech in her

complaint, and has not moved the Court for an amendment of her complaint.  See Complaint at

paras. 11-12 (mentioning only alleged retaliation following EEOC complaints).  Therefore, the Court is not willing to consider such a claim.

Furthermore, because Plaintiff was a public employee, even if the Plaintiff had included such an allegation in her complaint in the present action, she would still have to show that  her speech was on a matter of public concern.  Zorzi v. County of Putnam, 30 F.3d 885, 896 (7th Cir. 1994) (" If a public employee is retaliated against for filing a lawsuit, the public employee has no First Amendment claim unless the lawsuit involves a matter of public concern.");  Yatvin v. Madison Metropolitan School Dist., 840 F.2d 412, 420 (7th Cir. 1988); ("Everyone exaggerates the importance of his or her own activity and it is therefore natural for lawyers to suppose that every legal pleading, however humble, comes trailing clouds of First Amendment glory."); Baker v. Mecklenburg County, 853 F. Supp. 889, 893 (W.D.N.C.,1994) ("Litigious expressions are among those expressions that are not automatically ascribed First Amendment shelter simply because they are filed.").  Plaintiff's 1998 Complaint mentions nary a word about the treatment of any other person in the workplace and, like Plaintiff's other complaints, is limited to Plaintiff's own personal grievances.  Even if the deposition testimony reveals some evidence of general discrimination in the workplace, as Plaintiff's counsel suggested, it remains clear from Plaintiff's complaint that the focus of the lawsuit was an effort to redress her own personal grievances.  Therefore, even if the Court were to permit Plantiff to amend her complaint to include her 1998 lawsuit at this late stage, such speech was not on a matter of public concern.

Fundamental Constitutional Rights

Even where speech pertains to a personal grievance, speech may be on a matter of public concern if it "addresses important constitutional rights which society at large has an interest in

-35-

protecting." David, 101 F.3d at 1356 (quoting Woodward, 977 F.2d at 1404). At the hearing before this Court, Plaintiff's counsel argued that Plaintiff's speech included complaints that employees' freedom of association rights were being violated when the employees were told not to associate with each other.  Again, however, Plaintiff's complaint did not raise a freedom of association claim, and the Court will not permit an amendment of the complaint at this late date.

In addition, Plaintiff has made no showing that she complained about protected associational rights. In general, the First Amendment protects relationships that are more intimate than those between coworkers of a public institution. Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n, 889 F.2d 929, 936 (10th Cir. 1989) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 619-20 (1984)); Copp v. Unified School Dist. No. 501, 882 F.2d 1547, 1551 (10th Cir.1989) (although plaintiff was transferred because of his relationship with his coworker, plaintiff's relationship with coworker was not "the type of association that the First Amendment shelters from governmental action"); see also Grossart v. Dinaso, 758 F.2d 1221, 1232 n.16 (7th Cir. 1985) (citing Roberts, 468 U.S. at 619-20) (First Amendment rights to intimate association are "generally limited to familial settings and do not include emotional bonds between employees of public institutions.").  While the Tenth Circuit has recognized some areas where employees of public institutions have associational rights protected by the First Amendment, Plaintiff has not made any effort to classify her relationships with other coworkers, or other coworkers' relationships with each other, as of a type that would trigger such First Amendment protections.  See, e.g., Copp, 882 F.2d at 1550 ("associating for the purpose of assisting persons seeking legal redress" and "attending meetings on necessary legal steps" are protected associations); Morfin v. Albuquerque Public Schools, 906 F.2d 1434, 1439 (10th Cir. 1990) ("A

public employee's First Amendment rights also include 'the right to associate with the union of [his or her] choice . . .'").   Therefore, summary judgment is appropriate on Plaintiff's First Amendment claim.

Having found summary judgment appropriate because, when taken in the light most favorable to Plaintiff, none of Plaintiff's speech was on a matter of public concern, the Court need not address whether sufficient evidence exists to support an inference that a statement was "a motivating factor" in an adverse employment decision.  Martin, 179 F.3d at 888.

## ORDER

A Memorandum Opinion having been filed this date, it is now **ORDERED** that Defendants' Motions for Summary Judgment be, and hereby are, **GRANTED**.

DATED at Albuquerque this 15th day of March, 2006.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**Attorneys:**

**For Defendants**
Peter J. Gould
Mark Basham

**For Plaintiff**
Eric Sirotkin
Christopher Orton